IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOSHUA ALFORD,                          *

    Plaintiff,                      *

vs.                                     *

                                         CASE NO. 4:10-CV-38 (CDL)

COLUMBUS, GEORGIA CONSOLIDATED          *
GOVERNMENT, *et al.*,
                                        *
    Defendants.                     *
                                        *

O R D E R

    Plaintiff, a firefighter formerly employed by Defendant Columbus Consolidated Government ("Columbus" or "the City"), was terminated from his employment because he allegedly viewed pornographic and obscene materials using a City computer at a fire station, in violation of City policy.[1] Plaintiff alleges that Defendants violated his constitutional rights by firing him when other City employees were not disciplined for similar conduct and by failing to follow adequate procedures during his termination proceedings. Plaintiff asserts his claims against his former employer, the City, and individual City employees who he alleges were involved in the termination of his employment.[2] Defendants seek dismissal of

_____

[1]Plaintiff named as a defendant "Columbus Fire Department," which is a department of Columbus and is not a separate entity capable of being sued. The Court construes claims against "Columbus Fire Department" as claims against Columbus.

[2]Plaintiff brought suit against the following individuals in their official and individual capacities: Columbus Mayor Jim Wetherington, Columbus Fire Chief Jeff Meyer, Columbus Human Resources Director Thomas

Plaintiff's Complaint, arguing that it fails to state a claim upon which relief can be granted. As discussed below, the Court grants Defendants' Motion to Dismiss (ECF No. 8).

Defendants also maintain that the allegations in Plaintiff's Complaint are frivolous and that Plaintiff and Plaintiff's counsel should be sanctioned. *See generally* Defs.' Mot. for Sanctions, ECF No. 9. Defendants shall file and serve within twenty-one days of today's Order all evidence supporting the amount of attorneys' fees that they seek as sanctions. The Court shall conduct a hearing beginning at 10:00 A.M. on November 22, 2010, at which time Plaintiff's counsel shall show cause why such sanctions should not be imposed upon Plaintiff's counsel.

## MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

---

Barron, Columbus City Attorney Clifton Fay, and Columbus Assistant City Attorney Jaimie DeLoach. The official capacity claims against these Defendants are construed as claims against Columbus. *E.g.*, *Smith v. Allen*, 502 F.3d 1255, 1271-72 (11th Cir. 2007).

(2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL ALLEGATIONS

Plaintiff was employed as a merit system employee of Columbus, and he served as a firefighter and emergency medical technician with the Columbus Fire Department. Compl. ¶ 2, ECF No. 1. While at work on March 6, 2008, Plaintiff used the fire station's computer to view several web sites containing "revealing" photographs and advertising "erotic massages" and "full body rub down by blonde." *Id.* ¶¶ 2-4. When Plaintiff's supervisor came into the area, Plaintiff informed him that he had accessed an improper site and asked the supervisor to help him delete his browsing history. *Id.* ¶ 4. Plaintiff's supervisor initially found that Plaintiff had used the internet inappropriately, and he decided to put Plaintiff on probation with

3

regard to computer usage and to take away Plaintiff's "swapping" privileges. *Id.* ¶ 4; *see also* Compl. Ex. 6, Counseling Report, ECF No. 1-9.[3] Plaintiff acknowledged that he discussed the inappropriate internet use with his supervisor during a counseling session. Compl. Ex. 6, Counseling Report. Later, however, after Plaintiff's supervisor consulted with some of the individual Defendants, Plaintiff was suspended without pay pending termination for "'viewing pornographic material' and possessing 'obscene material' at the fire station." Compl. ¶ 5; *accord* Compl. Ex. 7, Employee Disciplinary Record, ECF No. 1-10 (recommending Plaintiff's dismissal and describing Plaintiff's violation as "[u]sing internet inappropriately (viewing pornographic material) in violation of CCG policy # 210-1000-002 and violation of department rules and regulations 8.98 (Obscene material on department premises)"). After receiving the Employee Disciplinary Record, Plaintiff retained counsel and submitted additional information to Defendant Meyer challenging the termination recommendation, but Defendant Meyer nonetheless determined that Plaintiff should be terminated from his employment.

---

[3] Plaintiff attached a number of attachments to his Complaint which he incorporated by reference into the Complaint and intended to "supplement the allegations of the Complaint." Compl. ¶ 16. Plaintiff did not number the attachments to his Complaint, but he did provide a table of contents. *See* Compl. App. Table of Contents, ECF No. 1-3. For the sake of clarity, the Court assigned an exhibit number to each of the eleven attachments listed in the table of contents. The Court notes that Defendants have not challenged the authenticity of the attachments.

Compl. Ex. 8, Letter from J. Meyer to J. Alford, Mar. 31, 2008, ECF No. 1-11.

Columbus had an Internet policy in effect at the time of Plaintiff's termination. Compl. Ex. 3 at 1-5, Columbus Internet Policy & Procedure, ECF No. 1-6. That policy provided that employees were not permitted to use City equipment to "[a]ccess, retrieve, or print text and graphics information which exceeds the bounds of generally accepted standards of good taste and ethics." *Id.* at 3. The policy instructed employees as follows: "Do not access pornographic or other sites of questionable taste" and "Do not access, retrieve, or print text and graphics information which exceeds the bounds of generally accepted standards of good taste and ethics." *Id.* at 4. In addition to the City policy, the fire department had a policy on "obscene" materials: Rule 8.98 of the fire department's rules and regulations provided, "Obscene movies, pictures, magazines and like materials are strictly prohibited on City property." Compl. Ex. 2 at 4, Fire Department Policy, ECF No. 1-5. The Columbus Internet policy does not define "pornographic" or elaborate on what type of web site is "of questionable taste" or "exceeds the bounds of generally accepted standards of good taste and ethics," and the fire department policy does not define the word "obscene."

After Plaintiff was terminated, Plaintiff appealed to the Columbus Personnel Review Board, which held a hearing. Three members of the Personnel Review Board were present. Compl. ¶ 15. At the hearing, Defendant DeLoach stated that "'the City has a zero-tolerance policy for employees that access adult material on their City computers.'" *Id.* ¶ 13. A witness at the hearing testified that he saw the photographs Plaintiff viewed on March 6, 2008 and that the photographs were of women that were "nude," "half-nude or some nude." *Id.* The witness also testified that other Columbus employees who viewed photographs of nude women were terminated from their employment. *Id.* After hearing from Plaintiff and from various witnesses, the Personnel Review Board upheld Plaintiff's termination. *See generally* Compl. Ex. 10, Pers. Review Bd. Hr'g Tr., ECF No. 1-13, 1-14 [hereinafter Pers. Review Bd. Tr.]. The Personnel Review Board hearing transcript does not state or otherwise suggest that any of the three Personnel Review Board members deciding Plaintiff's appeal dissented from the decision to uphold Plaintiff's termination. *See generally* Pers. Review Bd. Tr.

Plaintiff contends, however, that the Personnel Review Board was not authorized to take any action with regard to Plaintiff's appeal because only three members of the five-member board were present. Compl. ¶ 17 (citing Compl. Ex. 3 at 8-10, Pers. Review Bd. Policy & Procedure, ECF No. 1-6 [hereinafter Pers. Review Bd. Policy]). Based

on the Court's review of the Personnel Review Board hearing transcript, it appears that Plaintiff, who was represented by counsel in his Personnel Review Board hearing, did not object to proceeding before three members of the Personnel Review Board at the time of the hearing. *See generally* Pers. Review Bd. Tr. Nonetheless, Plaintiff now points the Court to the Personnel Review Board Policy, which states, "The Personnel Review Board shall consist of five (5) regular members and five (5) alternate members." Pers. Review Bd. Policy 2. The Personnel Review Board Policy also states that the Board "will conduct regular hearings on the third Wednesday of each month in which employee appeals are available to be heard" and that "[t]he decision of the majority of the members of the Board shall be final unless the decision overrules an official action and is appealed by the City Manager or the Mayor to the [Columbus] Council." *Id.* The Personnel Review Board Policy is silent as to how many members must be present for the Board to render a decision. *See generally id.*

At the time of Plaintiff's hearing, there was a pending proposal "to specify that three members of the Personnel Review Board constitute a quorum for transacting business," but that proposal had not yet been enacted. Compl. Ex. 9, Columbus Ledger-Enquirer Notices, ECF No. 1-12. Citing newspaper notices regarding the proposal, Plaintiff alleges that the proposal was to "*change* the number of Board members necessary to constitute a quorum." Compl. ¶¶

15, 17 (emphasis added). The notices, however, state that the proposal was to "*specify* that three members of the Personnel Review Board constitute a quorum for transacting business." Compl. Ex. 9, Columbus Ledger-Enquirer Notices, ECF No. 1-12 (emphasis added).

Plaintiff also alleges that other firefighters were permitted to view adult materials while at work, including premium channel television programs, video tapes, and magazines. Compl. ¶¶ 9-10. Plaintiff further alleges that, prior to his termination, there was no clear policy prohibiting employees from accessing adult materials at work. *Id.* ¶ 10. He also asserts that he was "a scapegoat for the leadership of the fire department" and that although Plaintiff was punished for viewing adult web sites while at work, other fire department employees were granted a "get out of jail free" card that enabled them to remove offensive materials from the workplace without being terminated. *Id.* ¶¶ 10-11. Finally, Plaintiff alleges that other Columbus employees—including Defendants Fay and DeLoach—viewed adult material "many times" and that a number of Columbus employees used their work email accounts to send and receive emails containing adult material. *Id.* ¶ 14.

Based on these allegations, Plaintiff makes the following claims:

Procedural Due Process. Plaintiff claims that Defendants violated his procedural due process rights because only three members

of the Personnel Review Board heard his appeal.  Compl. ¶ 17.

Plaintiff also claims that Defendant Barron should be held liable in

his individual capacity for a violation of Plaintiff's procedural due

process rights because he knew or should have known that, at the time

of Plaintiff's Personnel Review Board hearing, the Board could not

render a decision on Plaintiff's appeal with only three members

present.[4]  *Id.* ¶ 18.

Substantive Due Process.  The basis for Plaintiff's substantive

due process claim is difficult to discern, but it appears to be based

on his contention that the City's policy forbidding viewing

pornography and obscene materials on City computers was not clear and

that it was not strictly enforced prior to Plaintiff's termination.

*Id.* at 7-8 ¶¶ 19-20; *id.* at 8-9 ¶¶ 14, 16-20.[5]  Plaintiff also

contends that Defendants Meyer and Wetherington should be held liable

in their individual capacities for violating Plaintiff's substantive

---

[4]As discussed below, Plaintiff's Complaint fails to state a claim for
a procedural due process violation.  Accordingly, Defendant Barron is
entitled to qualified immunity on this claim. *E.g., Case v. Eslinger*, 555
F.3d 1317, 1325 (11th Cir. 2009) ("[G]overnment officials performing
discretionary functions generally are shielded from liability for civil
damages insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would have
known.").

[5]Plaintiff's Complaint contains sequentially numbered paragraphs until
page 8, when the paragraph numbering jumps from 20 to 14 to 16.

due process rights because the City had no "bright line" rule against adult materials prior to Plaintiff's termination.[6] *Id.* at 9 ¶ 20.

<u>Disparate Treatment</u>.  Plaintiff alleges that Defendants engaged in "disparate treatment" because he was treated differently than "other City employees," including Defendants Fay and DeLoach, who viewed and emailed adult material at work.  *Id.* ¶¶ 21-26.  Plaintiff also contends that Defendants Fay and DeLoach should be held individually liable for disparate treatment because they received adult material via the internet while at work but were not punished.[7] *Id.* ¶ 26.  It is not clear from the Complaint whether Plaintiff intends to proceed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") or under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, enforced through 42 U.S.C. § 1983 ("Equal Protection Clause").

---

[6]As discussed below, Plaintiff's Complaint fails to state a claim for a substantive due process violation.  Accordingly, Defendants Meyer and Wetherington are entitled to qualified immunity on this claim.  *E.g., Case*, 555 F.3d at 1325.

[7]As discussed below, Plaintiff's Complaint fails to state a claim for an equal protection violation. Accordingly, Defendants Fay and DeLoach are entitled to qualified immunity on any equal protection claim against them. *E.g., Case*, 555 F.3d at 1325.  To the extent Plaintiff seeks to assert Title VII claims against Defendants Fay and DeLoach, such claims fail because, even if their actions would constitute a violation of Title VII—which they do not—"[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

DISCUSSION

## I. Plaintiff's Procedural Due Process Claims

Plaintiff's procedural due process claims are based on his contention that Defendants violated his procedural due process rights because only three members of the Personnel Review Board heard his appeal. "The Fourteenth Amendment protects against deprivation of liberty or property without due process of law." *Brown v. Ga. Dep't of Revenue*, 881 F.2d 1018, 1024 (11th Cir. 1989) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972)). Defendants do not contest that Plaintiff, a merit system employee, had a property interest in continued employment and was thus entitled to due process prior to his termination. Mot. to Dismiss 10-12, ECF No. 8. Therefore, the question for the Court is whether Plaintiff sufficiently alleged that he did not receive the process he was due.

A public employee with a property interest in his job is entitled to "some sort of pretermination hearing, which includes notice and an opportunity to be heard." *Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998) (per curiam). Notice is sufficient if it timely notifies a plaintiff of the charges against him. *Id.* A plaintiff has a sufficient opportunity to be heard if he has "the opportunity to present evidence in his defense—to tell his side of the story." *Id.* (finding sufficient opportunity to be heard where

employee had two pre-disciplinary conferences and one post-termination proceeding).

Here, Plaintiff does not seriously contend that he did not receive adequate notice of the charges against him; he was informed that he was accused of using the internet inappropriately at work, and he was told which of the City's policies he allegedly violated. Compl. Ex. 6, Counseling Report; Compl. Ex. 7, Employee Disciplinary Record. Prior to his termination, Plaintiff was permitted an opportunity to tell his side of the story during the counseling session, and he further challenged his termination by having his attorney present additional information to Defendant Meyer. Compl. Ex. 6, Counseling Report; Compl. Ex. 8, Letter from J. Meyer to J. Alford. Plaintiff does not appear to allege that he did not have an opportunity to tell his side of the story prior to termination; accordingly, it appears that he was not denied pre-termination process.

Plaintiff argues that although he received at least two pre-termination opportunities to be heard, as well as a full post-termination hearing before the Personnel Review Board, he did not receive due process because the post-termination proceeding was inadequate. Plaintiff does not allege that he was not given adequate notice of the charges against him prior to the Personnel Review Board hearing, and he does not allege that he was not permitted an

opportunity to present evidence in his defense at that hearing. He does, however, assert that the Personnel Review Board was not permitted to hear his appeal unless five Board members were present. The hearing was inadequate, according to Plaintiff, because his appeal was heard by only three Board members. The Court notes that it appears that Plaintiff, who was represented by counsel at the Personnel Review Board hearing, did not object to proceeding before three members of the Personnel Review Board at the time of the hearing. *See generally* Pers. Review Bd. Tr.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Though Plaintiff alleges that the Personnel Review Board was not authorized to hear his appeal, Compl. ¶¶ 15, 17, the documents Plaintiff attached to his Complaint and incorporated by reference do not support Plaintiff's theory. Plaintiff correctly points out that he had a right, under Columbus policies and procedures, to appeal his termination to the Personnel Review Board. Pers. Review Bd. Policy 1-2. Nothing, however, provided Plaintiff with a right to be heard by a Personnel Review Board consisting of no less than five Board members.

At the time of Plaintiff's Personnel Review Board hearing, the Personnel Review Board policy stated that the Board "shall consist of five (5) regular members and five (5) alternate members." *Id.* at 2. The Policy also provided that the Board "will conduct regular hearings on the third Wednesday of each month in which employee appeals are available to be heard" and that "[t]he decision of the majority of the members of the Board shall be final unless the decision overrules an official action and is appealed by the City Manager or the Mayor to the [Columbus] Council." *Id.* The Policy was silent as to whether a quorum or certain number of Board members was required to be present before the Board could hear employee appeals. Plaintiff asks the Court to read such a requirement into the Policy based on the Columbus Council's proposed ordinance to "specify" that three Board members constitute a quorum for transacting business. Such speculation is inappropriate, and the Court cannot conclude that Plaintiff had a right to have all five members of the Board present for his hearing. The Policy provides that a decision by a majority of the five-member Board shall be final. Three of the five members of the Board found that Plaintiff's termination should be upheld. Therefore, it is clear that Plaintiff received the process he was due, which Plaintiff and his counsel tacitly acknowledged when they did not object at the time of the hearing to proceeding before only three members of the Board. Furthermore, given that Plaintiff

incorporated by reference the Columbus policies and does not allege that different policies applied in his case, the Court concludes that there is no reasonable expectation that discovery will reveal evidence supporting his theory.

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails to state a procedural due process violation. He did not allege that he received inadequate notice of the charges against him; he did not allege that he received an inadequate pre-termination opportunity to be heard; and he did not sufficiently allege that he received an inadequate post-termination opportunity to be heard. His procedural due process claims are therefore dismissed, and his assertion of them under the circumstances alleged in his Complaint lacked substantial justification.

## II.  Plaintiff's Substantive Due Process Claims

In addition to his procedural due process claims, Plaintiff attempts to bring claims for violation of his substantive due process rights. "Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc). Thus, a deprivation of Plaintiff's state-created property interest in continued employment does not, without more, state a substantive due process violation. *Id.* at 1557 & n.9, 1560; *accord Bussinger v. City of New Smyrna*

*Beach, Fla.*, 50 F.3d 922, 925 (11th Cir. 1995). Plaintiff does not make any additional allegations that would support a substantive due process claim, and the Court concludes that he has failed to state one. To the extent that Plaintiff attempts to assert a substantive due process claim, that claim is dismissed as frivolous.

### III. Plaintiff's "Disparate Treatment" Claims

Plaintiff also makes "disparate treatment" claims. He alleges that he was singled out and treated differently than other City employees who had violated the same policy he was accused of violating, and yet those employees were not disciplined in any way. These allegations potentially implicate two provisions of federal law–Title VII and the Equal Protection Clause. Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Equal Protection Clause is implicated in the public employment setting when the government treats distinct groups of individuals differently. *E.g., Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 605 (2008). To state a "disparate treatment" claim under either Title VII or the Equal Protection Clause, an employee typically must allege that he was subjected to disparate discipline because of his membership in a protected class, such as his race or his gender. *McCann v. Tillman*,

526 F.3d 1370, 1373 (11th Cir. 2008) (outlining Title VII prima facie case of disparate discipline).[8]  Thus, Plaintiff must allege that he belonged to a protected class, and he must also allege that his employer treated similarly situated employees outside the protected class more favorably.  *Id.*

In his Complaint, Plaintiff makes no allegations that he was terminated based on his race, gender, or some other class protected by Title VII or the Equal Protection Clause.  Absent these allegations, it is clear that Plaintiff states no claim for relief under Title VII.[9]  To the extent he attempts to do so, that claim would be frivolous.

In response to Defendants' motion to dismiss, Plaintiff clarifies his disparate treatment claim.  He argues that he has sufficiently alleged membership in a protected class because of his status as a merit system employee.  Pl.'s Br. in Opp'n to Mot. to Dismiss 2, ECF No. 16.  The thrust of Plaintiff's complaint is that he was singled out and treated differently from other City employees who also violated the City policy for which he was terminated.  Plaintiff argues that this alleged arbitrary treatment violates his

---

[8]The elements of disparate treatment claims under Title VII and the Equal Protection Clause are the same.  *E.g., Cross v. State of Ala.*, 49 F.3d 1490, 1507-08 (11th Cir. 1995).

[9]The Court notes that even if Plaintiff's Title VII claims did not fail on this basis, they would fail because Plaintiff did not allege that he exhausted the mandatory remedies through the U.S. Equal Employment Opportunity Commission.

right to equal protection under the Fourteenth Amendment. Unfortunately for Plaintiff, the U.S. Supreme Court rejected this type of equal protection claim twenty-one months before Plaintiff's counsel filed this action. In *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591 (2008), the issue before the Supreme Court was "whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class." *Id.* at 594. The Supreme Court held unequivocally that "such a 'class-of-one' theory of equal protection has no place in the public employment context." *Id.* As explained by the Supreme Court, "the class-of-one theory of equal protection-which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review-is simply a poor fit in the public employment context." *Id.* at 605. "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action." *Id.* The Court

concluded: "In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.' The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* at 609 (citation omitted).

Plaintiff's claim here is indistinguishable from the type of claim rejected by the Supreme Court in *Engquist.* Although Plaintiff strains to argue that he was in a class of merit system employees, he does not pretend to suggest that he was treated differently because he was a merit system employee. In fact, he maintains that he was treated differently than other merit system employees. His complaint is that he was singled out and treated unfairly compared to other City employees and that this alleged arbitrary treatment violated his rights under the Equal Protection Clause. While the layperson may sympathize with Plaintiff's plight, a member of the Bar should have recognized prior to filing the Complaint that this very claim had been soundly rejected by the Supreme Court. Simply put, no such claim exists under the Equal Protection Clause, and counsel should have known this prior to filing this action.[10]

---

[10]The Court reemphasizes that Plaintiff makes no allegation that he was singled out due to his race and/or gender.

For all of these reasons, Plaintiff's Complaint fails to state a claim for disparate treatment under Title VII or the Equal Protection Clause. Those claims are therefore dismissed.

## IV. Defendants' Motion for Sanctions

Under Federal Rule of Civil Procedure 11, an attorney who presents a pleading to a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."[11] Fed. R. Civ. P. 11(c)(1).

The issue of sanctions is before the Court on Defendants' motion for sanctions; Defendants contend that Plaintiff's claims are not warranted by existing law or by a nonfrivolous argument for

---

[11] "The court must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)[.]" Fed. R. Civ. P. 11(c)(5)(A).

extending, modifying, or reversing existing law or for establishing new law. Defendants also contend that, given the frivolous nature of Plaintiff's Complaint, its only purpose is for harassment or to increase the cost of litigation. In accordance with Federal Rule of Civil Procedure 11(c)(2), Defendants served their motion for sanctions on Plaintiff's counsel, and Plaintiff did not withdraw his Complaint. Defendants filed the motion with the Court more than twenty-one days after serving it on Plaintiff's counsel.

The Eleventh Circuit Court of Appeals has held that three types of conduct warrant Rule 11 sanctions: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir. 1991). The goal of Rule 11 sanctions in the context of a frivolous complaint is to deter the filing of frivolous claims while not chilling the attorney's legitimate "enthusiasm or creativity in pursuing factual or legal theories." *Id.* at 1514 n.88 (internal quotation marks omitted).

Based on the lack of legal authority supporting Plaintiff's claims, the Court finds that Defendants' motion for sanctions deserves serious consideration. Accordingly, counsel for Defendants

shall file within twenty-one days of today's Order all evidence supporting the amount of their claim for attorneys' fees. Counsel for Plaintiff shall show cause at a hearing beginning at 10:00 A.M. on November 22, 2010 why such fees should not be awarded.

CONCLUSION

Defendants' Motion to Dismiss (ECF No. 8) is granted. Defendants' Motion for Sanctions (ECF No. 9) shall be decided after the hearing scheduled for November 22, 2010.


IT IS SO ORDERED, this 14th day of October, 2010.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE